May it please the court If the jury in this matter actually believed that Kenneth Olsen took a bottle of equate capsules unscrewed the top and Put ricin in on the capsules or on the capsules then screwed the top back and put that in his desk Then it was absolutely game over for the defense in this case There would be no other explanation for that course of events if the jury so found then first that the equate capsules were intended as a delivery device and Second that he they were present the ricin was possessed when the intent to harm another person At trial the key issue in the case was whether the prosecutor could prove beyond a reasonable doubt that mr Olsen possessed the ricin with the intent to harm another person with the intent to use it as a weapon The defense was that mr. Olsen was a curious eccentric person who had accessed anarchist websites legal websites Researched poisons and made the ricin but had no intent to use it to harm another person Arnold Melnick off what possible good was it your honor? The well ricin has a commercial purpose. You can buy it on the market It's has biomedical research purposes and their commercial vendors of ricin as the record in this case shows to him. I'm just curious He was just curious as well. Your honor He the the evidence shows that when he was interviewed by the officers. He was also curious He was doing this as an academic exercise because more than as a hobby than anything else And there was no purpose Demonstrated in the evidence here But the point is the prosecutor had to possess had to prove that not only that he possessed it For whatever reason the they had to prove that he possessed it with the intent to harm another person to use it as a weapon Arnold Melnick off a Washington State Patrol scientist Opened the equate capsules in his laboratory along with Some other containers and dumped the capsules out on his workbench at his workbench He scraped the test tubes and other containers that did contain ricin clearly And dumped the capsules out on the same workbench when he realized he couldn't test them for ricin He then repackaged the test tubes and put the equate capsules back in screwed on the top Repackaged them and sent them to the army laboratory at trial The government relied heavily on the fact that the army laboratory found that there was ricin on the equate capsules To prove mr. Olsen's Criminal intent the intent that he used that he intended to use these to harm another person The defense tried to argue that Melnick off had sloppily Contaminated the capsules with ricin from the test tube scraping and that he was lying when he said he changed his gloves in between handling various parts Pieces of evidence and also when he put down a clean sheet of paper on his workbench But they had no real evidence to call into question Melnick off's laboratory technique or his veracity as a witness unbeknownst to the defense at the time of the trial the state patrol had massive evidence of his Laboratory incompetence and his false testimony dating back to 1987 and based on that evidence which existed prior to mr Olsen's trial The state patrol fired him three weeks after his trial Acknowledging that he could never ever appear as a witness for the state Prosecution witness again because his integrity and his honesty had been so severely damaged Well, what difference would that have made if there wasn't if the defense wasn't really challenging the fact that he made rise Well, because the problem for the defense in this case your honor or for the government in this case Was that they had a lot of evidence of mr. Olsen accessing internet websites. In fact, they had 35,000 pages of that and in the websites that he accessed there was a lot of textual information as we know when we access a Website and you can't really tell what he was accessing each of those like the poor man's James Bond and some of these anarchist cookbook some of these other things that are available on the internet have both a recipe for making ricin and also Descriptions of how to deliver ricin and the problem for the government it was out of the 35,000 pages They couldn't really put their finger that mr Olsen was researching the delivery devices or that he intended to use any of those delivery devices the spiked Equate capsules was the lynchpin. It was the critical evidence because with that evidence. There's really no other Explanation so did the defense argue that wasn't ricin was that that there was a reasonable doubt as to whether it was would that have been the argument if you would have this information about the No, I'm trying to see I'm just trying to understand what you would have used and I'm trying to and I'm trying to answer here Here's what it is. The defense was trying to argue that there was ricin in the test tubes and ricin in the jars and There could have been no ricin at all in the equate capsules before it went to mr. Melnikoff's laboratory In mr. Melnikoff's laboratory he took a knife a Spatula and he scraped ricin from the bottom of the test tubes on his workbench and from the other glass containers He also opened up the capsules dumped them out on the workbench Creating a very real risk as we demonstrated with an affidavit from dr Harris in our on our pleadings in the 22-5 court below a real danger that mr Melnikoff cross-contaminated the equate capsules with ricin that came from the test tubes Then he put them back in sent them to the army laboratory and they found the ricin that he had cross-contaminated If if mr. If mr. Melnikoff was the one who cross-contaminated it then the evidence takes on an entirely different character Now we know that this was important evidence for the government because of the way the government treated it at trial The government at every stage of the case Emphasized that this was important evidence during her opening statement. The prosecutor stated there is going to be one question Throughout the course of this trial that you will ask yourself over and over and over again Why why why why would a computer tech put it in allergy medication and then she answered that rhetorical question? He did it because he was intending to use it to harm someone and then she said thank you ladies and gentlemen and sat down and Anyone who has seen a lot of trials knows that this is how a good advocate organizes her argument You hit the evidence you take your very best piece of evidence the equate capsules you hit the jury with it and then you sit down invoking the two Basic psychological principles of trial primacy that is you do it in the opening statement and Recency you do it the last thing before you sit down because that's what the jury believes That's how you can tell that is the most important piece of evidence Because she used it as an oral advocate who is trained in this exactly would do Now the defense tried to argue an opening that there was co-mingling and contamination by Melnikoff But they just didn't have the guns. They didn't have the evidence to prove that To show that he was lying about changing his gloves or in practice that he was a sloppy scientist because they didn't have this information The government the other way you can tell that was really important evidence is the way the government handled both its direct examinations and the cross examination of the defense witnesses Again, one who has been around a lot of trials knows that the best way to cross examine a defense character Witnesses is to take your very best piece of evidence and to smack him in the face with it So your position is that had the jury known this impeachment evidence of what was in the Melnikoff's background that it would have concluded there was a reasonable doubt as to whether your client Put the ricin on the capsules in the bottle exactly exactly your honor, and this was a person, okay? I'm gonna answer any questions. I was just reading Wouldn't they also have to conclude there's a reasonable doubt that he intended To use the ricin that was in the test tubes As a as a weapon right, but that was fatally ambiguous evidence your honor I mean he had made ricin everybody knew that there's a recipe for ricin. It's not illegal to possess ricin It's just not a crime you can have ricin in a test tube and you know there's With as long as you're not possessing that with intent to do harm to someone It's simply not a crime and there was no other evidence from which The government could clearly draw the could connect the dots that he intended to do this that he acted with the intent To commit a crime the that you could tell it's important because they did an opening they cross-examine the character witnesses And and you do that in a trial because you try to shake the character witness you try to show that they're naive And they did it in the direct examination of their own witnesses he was In each of the chain of custody witnesses the government went out of his way to to exclude the possibility that any of the other folks who had handled the These various items could have cross-contaminated it right so that so that nobody else could have so you have no So so that the evidence From which the jury would have to conclude all this was the impeachment evidence that this had happened that there had been discipline in the past That not that there'd been discipline, but that the witness had lied repeatedly under oath, okay? Yeah, okay, so if I could interject a question Almost all the arguments so far It seems to me goes to the issue of the third prong of Brady But whether there's prejudice assuming it's favorable evidence about Now the cop and assuming it was suppressed I would like you before your Opening segment is done at some point to talk about why? Why we would say that the prosecutors suppressed? Information that was not directly in his possession. It was in the state's possession when it was a Was not a joint investigation I Be happy to answer that question first of all it's it's a horn book law that the prosecutor has a duty to learn of favorable Evidence known to others acting on the government's behalf Carragher price and Kyle's but why? Let me stop you right there because I read that in your brief Why would we conclude that the Washington State Patrol is? acting on behalf of Because it was a state police agency that was they they were handling the evidence there was correspondence between the federal prosecutor and mr. Melnick off They they they they corresponded with him he as mr. Oh as mr. Hicks the prosecutor wrote a letter afterward your your help in this case was so important to the you help me understand the evidence I mean if you look in the record your honor Excerpt of record 548 mr.. Hicks the prosecutor wrote a letter to mr. Melnick off saying how important he was to the case how he had helped him understand the evidence how he had testified in his usual Manner and how that his how important he was to the case There's no question the fact that it's a state agency doesn't doesn't make any difference in in price your honor It was the Portland Police Department that failed to deliver the evidence And in Coring of course it was various Alaska police agencies that had evidence regarding the key witnesses mr. Allen and the other key witnesses in that case So the fact that it's a state agency doesn't matter and the government must have agreed with your position on that or they wouldn't have Made efforts to reach that assistant attorney general in the first place right under exactly your honor as judge Friedman points out There's correspondence between them. There's a there is evidence in the record that We're trying to supplement the record with one item But you know there's a conversation between the federal prosecutor and a head of the state patrol laboratory saying I got a call from the state Lab guy says I got a call from mr.. Hicks the prosecutor He wants to know about the Brady material in this case. They knew that they had an obligation so did the federal prosecutor That's what he told the judge. He told the judge at trial. He says I know I have an obligation to get this material I'm gonna follow up on it, and then when he comes into court He makes an affirmative representation that there's nothing there to be found now It's one thing to just not look for it, but it's another thing to tell the judge when the judge asks you You're what is there anything else. I need to know about mr. Hicks the prosecutor and the prosecutor says judge no There's nothing else you need to know about you have a case was very clear that a defense lawyer can rely on that affirmative Statement by a prosecutor that there is no Brady material Well your honor. I would suggest that it was ineffective assistance of counsel for the defense lawyers in this case not to conduct their own Investigation well that may turn on that may turn on whether you can demonstrate the third prong of Brady whether it was material and prejudicial because Tell me if I'm wrong But I think that the third prong of Brady Is basically the same test as the prejudice prong of the ineffective assistance of counsel case it is it is is whether the the absence of the evidence Undermines the confidence in the outcome of the case and how can it not undermine the confidence in the outcome of the case? The prosecutor relied on this evidence in the opening the prosecutor relied on this evidence in the closing Parts of the closing in our reply brief there that demonstrate they were clearly relying on it it was important evidence throughout the direct examination of their own witnesses the cross-examination of The of the of the defense witnesses and using just a little common sense What if one looks at the evidence one can see how powerful that evidence is it's not just reading about it It's not just taking notes about it. It's actually Making the ricin and then taking the ricin and putting it on the equate capsules There's no other explanation for that than an intent to harm another person if it turns out that that is false evidence Then that totally undercuts the the government's theory of the case and it totally undermines confidence in the outcome as price And coring state if there's a reasonable probability that the withheld evidence would have altered at least one jurors assessment of Melnikoff's credibility Then that is enough to undermine confidence in the outcome of the case and the conviction ought to be vacated Mr. Offenbecker, this is just a reminder. It's up to you, but you're down to about five minutes now. I see that Thank you, Your Honor, Your Honor with respect to the I Mostly want to answer questions from the court I think we've laid our position out fairly carefully in our briefs with respect to the juror misconduct issue, Your Honor there is a constellation of Facts presented to the district court, which I name as 11 facts of lies of this juror That he had discussions ahead of time at least a dozen times. He had a firmly held opinion He lied about whether he'd been convicted of three different crimes He lied about whether he'd ever been in a lawsuit including one lawsuit where he skipped a he was had a judgment for skipping bail and was arrested by the bail bondsman and then claimed That he simply couldn't remember any of this And that he lied when he lied about being a witness in a proceeding he said oh, yeah I guess I lied on that question as well He had a reputation for lying in the community reputation in the community for lying had a history of alcoholism And he failed to answer the questions Truthfully in voir dire. Now the district judge found that this was no actual bias We've suggested the court that that decision is clearly erroneous You should have a firm and definite conviction that the district judge was wrong and find actual bias with respect to implied bias The in fields versus Brown it's indicates. That's a mixed question of fact and law That is a matter of the novel review You should look at those that constellation of facts on your own and determine that there is presumed bias That instead it's not a clear error standard. Were you the trial counsel? I was not your honor. Was judge Nielsen the trial judge? He was your honor The green case that we pointed I'm gonna sit down here to save some time The green case we pointed is really the high-water mark for permitting jurors to lie and get away with it In green there were fact, you know The the district court simply said we're going to decide that this is this case is way beyond the facts in green and if If If the court if the truth doesn't matter in voir dire Then voir dire is simply going to become a meaningless act and there's no sense going through the motions Your honor if there are no other questions on these issues. I'd like to reserve the later my time. Thank you Sorry That's very loud, okay, we don't run the clock while you're adjusting Good morning, and may it please the court and counsel My name is Stephanie van Martyr and I was one of the USA's who actually tried this case back in 2003 and have been a part of the appellate's practice of this case Since that time and I first want to address a couple things up front that were stated in 2003 it was unlawful to possess ricin unless you were an Exempted individual by statute and that included only laboratories and there were very few in the country You sound it was only one of them who could possess ricin. So that statement is absolutely incorrect No citizen could produce or manufacture Manufacture ricin and certainly in this case at this time. It was a unique time period It was right it occurred actually right before 9-11 So the United States did have the requirement to prove that he possessed it with the intent to use it as a weapon and I want to be very clear in terms of the evidence of intent evidence that was presented to this court on direct appeal and evidence that this court characterized as Overwhelming of his intent to use the rice and produced as a weapon. It was not to rely solely on the equate capsule as 36,000 pages of proxy logs what that equated to was one year of research by mr Olson on not only a number of toxins nicotine botulism all kinds of different deadly toxins until he settled on rice and and he focused his research on rice and How to produce rice and how to manufacture rice and and counsel mentioned the poor man's James Bond But what was significant about that is that mr Olson actually purchased the poor man's James Bond from the internet and had that material with him at the time He began to manufacture the ricin in terms of the physical evidence a number of items that were sent to you Sam right aside from the test tubes Aside from the powder rice and that was collected in the metal bowl Aside from the caked on rice and that was at the bottom of the mason jar That there was also a number of other items coffee grinder Strainer things that were consistent of the rice and passing through when mr. Olson manufactured the rice and Important other important pieces of evidence that counsel likes to skip over is that the defendant purchased books called how to kill Getting even and how to kill manual. He had actually handwritten notes in the section of Mickey Finn or spiking liquids in order to deliver a toxin More importantly to that he had handwritten notes calculating calculating the max maximum lethal dosage for a hundred and fifty fact fifty pound person in various medications help me how what was the quantity that he Had that the quantity of rice and rice in here the quantity of rice and was Sufficient enough to kill at least 75 people up to 750. It was multiple grams up to what did you just seven hundred and fifty? Your honor and it the moat that it was hard to quantify the actual amount because it was so it was purified and the expert Testimony from the individuals from you Sam read was because of the purity level it exists at three to five percent purity The purity level of that was the rice and that mr. Olson created was 19% pure So he had actually elevated the purity level which made it a dangerous circumstance for the individuals that you sound right in the testing So they went through it was a very lengthy series of expert testimony on how they went through to quantify The weight and the actual amount of ricin but more important to that was the purity and the purity was it was in what? what kind of Base In what form? Yeah, the test tubes It was a waxy substance when they found the test tubes There was actually paper towels inside the test tubes and the waxy substance at the bottom Was what was testified to be the 19% or more purified ricin there was a powder Collection of ricin in the bottom of a metal bowl There was also caked on rice and that was at the bottom of the mason jar and the testimony related to that was that was in the various process of the Manufacturing and the extracting of the rice and from the castor beans that were also found at mr. Olson's desk councils I understand it. So tell me if I'm wrong He doesn't really contest That he made the rice correct, so that's not really the issue But but what is the evidence that goes not to? Proving he made ricin but to proving he had a deadly intent in doing and that's that that's the series of Internet evidence that I was getting to of those 35,000 pages We boiled down to 22,000 pages of actual search strings typed in by the defendant Undetectable poisons how did the delivery methods was the next phase of his research and he spent a great deal of time on aerosolization on delivery through oral ingestion That included the possibility of the use of a mickey fin. So this is not even considering the equate tablets he had already begun research in his handwritten notes and actually had the medication at his cubicle of sleeping pills and Antihistamines and in his handwritten notes was calculating the maximum lethal dosage for sleeping pills and antihistamines and Also in conjunction with that was researching on the internet by his own tight search strings delivery delivery of deadly pills silent deadly delivery And that's all has been referenced and all of the materials that were provided on direct appeal as well as in this appellate record so it wasn't just The fact that there was rice and found on some of the medication and and I want to make sure that this point is clear As well, not all of the pills were tested. There was a number of items of medication including the equate tablets found in. Mr Olson's cubicle not all of them were tested by you Sam read of The number of pills tested from the equate bottle for tested positive for the presence of rice Consistent with cross-contamination that was testified to one pill tested positive for higher concentration That's what the testimony was that it had that it was more likely than not it came into direct contact With a higher volume of ricin. That's what the testimony was It was just one piece of the evidence that was consistent with his handwritten notes and his other research So even if we did not have the equate tablets Even if we did not have the positive test of the of the rice and on the equate tablets There was a huge volume of evidence as she was continued intent and that how to kill manual Was one that was one of great importance with his handwritten notes in terms of delivering that deadly Mickey Finn, okay So your position fundamentally is and the third prong of Brady If all of this stuff about Melnick off had been turned over and if through cross-examination that man's Credibility was totally destroyed That would not have changed the result of this trial. No, and I want to go back to the other two prongs But on that particular prong no, mr Melnick off and I think when you address this Brady issue you have to go back and read his testimony from beginning to end Mr. Melnick off just happened to be the lab tech on duty when detective Thompson called him and said I have these volumes of materials and the strange substance that was found at Agilent Technologies Which is not a laboratory of any kind help me help me figure out what this is I don't know what this is. So Melnick off read the materials came up with a list of possible toxins that included several pages Then looked at those physical items. Now. I don't believe the record is as mr. Offenbecker represented in terms of how sloppy. Mr Melnick off was but it certainly was a subject before the jury and to suggest that it wasn't is misrepresentation of the record, but he would have had a lot more to question Melnick off about if if the defense had the Johnson report well my my my my response to that your honors twofold and This goes back to the first two prongs and the first is whether it was Whether it would have even been admissible at that point in time as some form of impeachment I think that the record is clear that those were accusations and they were not finding so what under Brady? That's irrelevant and you and the substance of those accusations And I think this is the other important point had nothing to do with his activity in this case So what that's also irrelevant. There's no accusations under Giglio. That's irrelevant There's no accusations, even if we're considering the accusations themselves is something that could have been admissible It was focused on hair sample analysis. None of which occurred in this place in this case It was focused on testing mechanism and his credibility in testing. He didn't conduct any tests in this case. He simply Took the evidence and realized I can't do anything with this because we do not have the capacity to even test if this involves So he did not even engage in testing activity What about the 11 such the 11 cases or 10 cases of potential wrongdoing in Washington State? Now forget about Montana In Washington State there was evidence that he was being investigated That there were already at least 10 incidents that were serious enough that they were isolated during the course of this investigation There were allegations that he may have lied in his employment application in Washington State Your honor as to that in going to what the findings were in August, which was a month after Findings are irrelevant under Brady those findings concluded that none of those errors would have resulted in a different testing or a different result in The cases and in most Brady cases, you don't have an internal investigation you have favorable or exculpatory or impeachable evidence or evidence that might lead to admissible impeachable or Included is just irrelevant And your honor, I understand the court's position I respectfully disagree because I think at that point in time with the nature of the pending investigation, which was an internal investigation that an Accusations that this witness hadn't even been informed of yet Would have had a his own response and in fact did have his own response and fought those We would have gotten into a mini trial as to the legitimacy of some of those Because the judge would at least have known the quantity of information that was Brady and Giglio information and then he could have made rulings as to what lines of questions would and would not be permitted and Defense counsel would have had it in advance of trial and would have been able to do his own Investigation it might or might not have led any place And your honor those reports and I understand the court's concern Because now after the fact we all have the ability to read reports that we did not have access to I understand the court's concern about that. Your agent had access to them. The agent was mr. Melnick off Mr. Melnick off didn't do right. He did not have access to them. Mr Melnick off nor his attorney were provided any materials and as the testimony from Attorney General Brown and the lieutenant who was in charge of That disciplinary review they would not have provided them to us Even if we had known they existed because at that time of the investigation It was an internal investigation with no conclusions or findings counsel. I think I mean, I understand your position. It's in your briefs You've stated it. Well now but in terms of what might be of most help You know to us as we're deciding this. Why don't you assume for now? That the information is favorable for purposes of Brady that it would help impeachment And just focus on Issues of suppression and purchase your honor as to the issue of suppression. I'm glad the court brought that up the United States Attempted to continue to inquire as to the status of this investigation Mr. Hicks actually was informed by mr. Melnick off that he was under investigation and on administrative leave Mr. Hicks reported that to Defense Council Reported that to the court the only materials that were provided to mr Hicks at that time had to do with a Montana investigation and those materials were also provided to the court and to counsel Mr. Hicks continued to email and tried to contact to determine if there anything had changed in the status of the investigation and Continued to inquire of mr. Melnick off if anything had changed in the investigation and that's the important point Is that mr. Melnick off had not even been informed of the nature of the accusation? So, mr. Melnick off did not provide any untruthful testimony at the time. He testified He was unaware of the specifics of that investigation and at that time he had not been found of any wrongdoing Mr. Hicks even brought in. Mr. Tripedi who represented. Mr Melnick off in an attempt to make sure that mr Tripedi informed the court of the status of the investigation so that we were attempting to address Everything that we had knowledge of at that time of this witness, but more importantly so Nothing was suppressed from the United States perspective. It attempted to accomplish its obligation It did not possess nor did it have knowledge of the specifics of that investigation and back to the more important point is again Even if this information had been known Even if the court allowed a hearing to determine what was or was not admissible from that investigation and it had been before the jury It would not have changed the outcome because the issue of cross-contamination was raised with mr Melnick off and it was also raised with each and every person who touched that evidence the employees from Agilent had no Idea, they were dealing with ricin. They were sent to clean out the defendants cubicle They found these items. They touched them with bare hands. They picked them up. They put them in a box They did testify that they didn't shake them about or turn them upside down, but they didn't seal them up They didn't place them in bags because they had no idea that it was ricin It went to the Agilent security who pulled them out of the boxes who laid them about? Who then realized they should call the police and even when the deputy showed up They had no idea they were dealing with ricin. The deputy did the same thing He gathered the items put them in a bag All of those things were presented before the jury the issue of whether they could have been cross-contaminated by each other Was presented to the jury and it was even questioned of all the experts who conceded that they could have cross-contaminated Cross-contaminated each other that doesn't negate the fact that the defendant was still the one who produced it that the defendant Uncontestedly produced this ricin and that the other overwhelming evidence as to his intent was clear and apparent before the jury Counsel, let me ask you a question sort of like a thought experiment for a minute. Let's just assume that before The jury started deliberating The district court had instructed them We've now learned that the ricin Was not in the capsules you should Accept as a fact that the capsules were contaminated and there was no ricin in them Is it beyond a reasonable doubt they would have Concluded that the making of the ricin and Possession of it by mr. Olson was for use as a weapon Yes, and the reason that I say that is as follows We didn't have to prove he had a delivery method that was what he provided us by his own research in the evolution of his not only finding the right toxin and Producing that toxin, but then he himself decided to conduct research on how it could be delivered and in what manner so whether those capsules existed or not all of the evidence of his research and his written notes and the books that he Purchased proved that he possessed it for a non peaceful purpose There was no other purpose in light of the evidence for him to have manufactured the ricin There was no peaceful purpose being presented because the 36,000 pages of research The book he purchased and the handwritten notes on delivery methods Were more than sufficient to prove that he possessed it for a non-peaceful purpose and your honors I do want to touch upon this juror issue of mr. Levitt I Think it's important to to put into context and counsel accused the United States of not addressing the green case Will we address two cases that were found after green that we believe to be more important point because this is not a Circumstance where the statements by mr. Levitt and the juror questionnaire would have been a basis for his removal for cause His statement as to his prior convictions specifically the one focused on was the misdemeanor trespass That occurred almost ten years prior to him filling out that questionnaire resulted in a hundred dollar fine His testimony before the court and I also think that this is important This man was called to court was not told why he was called to court eight years after he sat as a juror Came into court Had no idea of the accusations against him had no idea. He was being called a liar Was presented to the court and to the judge was appointed a lawyer and within two hours was on the stand defending himself Against accusations that he had no idea were even alleged So yes, he was a bit defensive and frankly, I don't blame him but his explanation as to his answers as Judge Nielsen found Were more than reasonable answers on the word question board your questionnaire He had forgotten about his misdemeanor trespass conviction that resulted in a hundred dollar fine How could he have forgotten all of these conversations with? Mr. Ryan? Well, you know, let's talk about those conversations the Ryan's had a broken business relationship with mr Levitt the Ryan's raised this allegation eight years after trial The Ryan's and I think the timing of these conversations is also crucial What they allege is that we all stipulated the media reports came out in June of 2002 Mr. Levitt was let go or fired or under mr. Levitt's understanding They just broke apart or their business relationship in August or September of 2002 So we're talking about a time frame that occurred a year prior to voir dire According to mr. Ryan who doesn't remember all of the specifics as to when these conversations occurred But agreed they could after media and before he was released There were water cooler conversations according to mr. Ryan that were a result of reviewing the media Mr. Levitt testified that he has no memory whatsoever of these water cooler conversations that occurred a year prior to trial So even if this court were to assume these alleged conversations occurred, which again would have been nine years prior to his testimony He did not there's no evidence He possessed any of those opinions at the time of voir dire. Let's see part of your problem and also part of Your mr. Offenbecker's problem is that the judge made credibility findings in his credibility findings Can't be right because he found both of them credible So you're standing here and you're attacking the credibility of the Ryan's and the judge found them credible and mr Offenbecker's attacking the credibility of mr. Levitt and the judge found him credible. I think you can't because what he's saying what mr Levitt testified to is he didn't have any memory of those conversations and he didn't hold those opinions at the time that he engaged in voir dire said the judge's findings mean that he credited that Ryan was right that he had talked to Olsen about this, but Olsen was right He didn't remember it at the time. I think what what the questionnaires? I think what judge Nelson was saying is that because the conversations occurred so remote in time Mr. Ryan remembers them specifically as to what occurred. Mr. Levitt does not Mr. Levitt, there is no evidence because the Ryan stopped talking to mr. Levitt a year prior There's no evidence that any of those conversations occurred any time close to voir dire or that mr Levitt held those opinions at the time of voir dire, but if but if Ryan is to believed Levitt had these views so vehemently and so strongly that that the time difference between the Conversations and voir dire would hardly seem to dissipate the strength of his feelings if it was true that he said those things Well, I guess your honor. I disagree with the court's interpretation of what mr. Ryan's testimony was Mr. Ryan testified that mr. Levitt made lots of conversation about the scientific Discussion that came out in the media as to what occurred with the rising and that he made a statement That he believed according to mr. Ryan that he believed he was guilty Now what mr. Levitt characterizes he would often read the paper and watch the news and make commentary About certain things and as this court and as the Supreme Court has said that is not in itself Sufficient to establish bias unless they hold those things at the time they sit at trial So I I don't think it's fair to say that mr. Ryan's testimony Indicates that mr. Levitt most clearly should have had these opinions and maintained these opinions a year later at voir dire Mr. Levitt test or told the judge during voir dire I watched the media so had a number of jurors because it was a very publicized case All of them were honest about that and mr. Levitt in his testimony said I probably talked about it back then I don't remember it But I very well could have that doesn't mean he maintained that opinion at the time of voir dire or that there was any evidence He lied about that. Isn't this a factual issue? So you don't have to Convince us as I understand it the judge Nielsen was definitely Right. You just have to convince us that he was not Clearly erroneous on actual bias. That is correct. You're talking back on the other hand Would be arguing that he was clearly erroneous in light of what he said was Credible about Ryan that is correct your honor And I don't think that there's any indication whatsoever that judge Nielsen was clearly erroneous and his factual findings as to mr Levitt I also want to touch upon this this what mr. Offenbeck are characterized for this Juror as a liar and an alcoholic and all of these other things the way your time you are. Oh Am I in the place? Yeah, I hadn't paid attention. You can wrap up your thought and we'll give mr. Offenbeck your honor I will simply state that I think the district court was correct in concluding that all of the statements by mr Levitt were understandable and explainable given his understanding. What did your questionnaire was? And given his limited legal understanding as to certain terminology and there's no evidence He had any bias at the time. He sat as a juror Thank you. Thank you counsel mr. Offenbeck Stacy could you add Two minutes since Appellee went over time. This will balance the time, but you don't have to use it all Certainly appreciate it you conclude when whenever you can. Yes, your honor First with respect, let me just take the last point first since it's here and that is recency The with respect to the juror as Judge Gould pointed out There is a clear error standard for the findings that the judge made about actual bias the district court judgment However, this court conducts a de novo review to determine whether there's presumed bias so the court can look at the constellation of facts here and determine whether it's In its own judgment. This has crossed the line. Let me ask you a question about that My other cases I've had involving implied bias Involve things like there's implied bias because a relative of the juror is like Involves in the trial or there's implied bias Because the jurors family member was poisoned by ricin or something, you know, like there's something that That we can say as a matter of law as a problem How is this an implied bias case it's it's an implied bias in this way What Dyer and green tell us is that when a juror lies? During voir dire and on the juror questionnaire in order to gain a seat on the juror it introduces destructive uncertainties about the jurors Willingness to to sit on the panel You're assuming that he lied in order to gain a seat on the jury rather than he lied Because he didn't think certain things were crimes or he had forgotten something or he had been drinking too much at the time and Interestingly in this point in this case, there is a reason why he would want to get on the juror He had a previous in in green and all these other cases You don't have a person who has expressed a firmly held pre-existing belief that the defendant is guilty He also believed that the government was going to prove its case based on the internet sites The evidence that had been in the newspaper and he had also told mr. Ryan that he had personally accessed the same internet sites as mr. Olson had he read that in the newspaper and then he told him so in this case your honor as you don't have in green Dyer you have a person who actually has a motive to get it. Now. What what what is his motive? He wants to help the government. It's shortly after 9-eleven. Maybe he thinks this is his patriotic duty having convinced himself that mr Olson is guilty to get on this jury We can never know exactly why a person wants to get in the jury But certainly that is one reason why he might have wanted wanted to get on the jury because he already thought mr Olson was guilty and he wanted to convict him That is a fact that is far beyond green and this idea that the court has some tolerance for jurors Who have them make a mistaken answer or perhaps don't give a full answer as in the fields versus Brown Case Is is fine, but this is way beyond the pale I mean, this is not a question where he had one criminal conviction. He had three or four criminal convictions It's not a case where he had you know, he was a person in a civil lawsuit once He had three different lawsuits and one of the lawsuits involved getting arrested by a bail bondsman That's not the kind of thing you forget And you should look at those facts independently and say look a couple of questions One or two questions where you know, he's slightly can't remember something is one thing but this is beyond the pale and it's in a case where a guy has a reputation as a liar an Alcoholic and has expressed a firmly held opinion that the defendant is guilty Let me just look if I could at a couple of other Issues this this question about the findings at the excerpt of record page 174 This is the first page of the Johnston report, which you're you're familiar with Counsel keeps saying that there's no findings but in in bold letters in all capitals It says on the first page of the button of the report findings By the way, it's it's fine for you to do this. But remember we extended Argument five minutes and another two. So just please wrap up by the time this I will your honor They're they're both on Excerpt of record 149 and 115 there. This is all again findings conclusions It's clear that there were findings and frankly as Judge Friedman's indicated. It's legally irrelevant There's also at the excerpt of record 125. You can see that the FBI was actually involved in this investigation They were the ones who were doing the lab report that indicated that mr Melnick off was lying. So the FBI which was the investigating agency in this case was clearly Also aware what was going on Your honor I would ask the court to look not at what the government wishes now how they have tried the case But how they actually tried the case in opening in closing in examining their own witnesses and in cross-examination The absence of this impeachment evidence at trial undoubtedly undermines any confidence in the jury's verdict and you should vacate the conviction Okay. Thanks counsel. I think we understand your argument very well argued by Both sides and we appreciate it the case of old United States v. Olson Shall be submitted
judges: Friedman, Schroeder, Gould